# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6582 | **DATE** | 6/14/2000 |
| **CASE TITLE** | John O'Connor, et al. Vs. Kenneth S. Powell, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and recommendation recommending that plaintiffs' motion for judgment [27-1, 34-1] be denied; and that plaintiffs' motion for an order of contempt of court [34-2, 40-1] be denied is hereby submitted to Judge Coar.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 15 2000 date docketed | 70 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | S.B. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 6/14/2000 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

DOCKETED
JUN 15 200●

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN O'CONNOR, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KENNETH S. POWELL, et al., ) <br> ) <br> Defendants. ) | Case No. 99 C 6582 <br><br> Judge David H. Coar <br><br> Magistrate Judge <br> Martin C. Ashman |

## REPORT AND RECOMMENDATION

Plaintiffs were investors in an alleged real-estate investment scheme devised by the defendants who promised the plaintiffs a substantial return on their investment, according to the complaint. The defendants convinced the investors that they were in the process of clearing title to a number of contiguous parcels of land in an economically distressed area in Missouri, that they were close to entering a purchase agreement to acquire that land, and that after the closing, the land would be resold to a developer for a substantial profit. The scheme went awry (from Plaintiffs' perspective) when Plaintiffs began to realize that the closing would never happen, despite the defendants' assurances on numerous occasions that the plaintiffs' investments were safe and secure. At various times, Plaintiffs were told that the defendants needed more money to keep the transaction alive, sometimes to pay off non-existent entities which ostensibly stood in the way of closing, and each time the plaintiffs gave more money. The defendants also cautioned

Plaintiffs to keep quiet about the closing difficulties to avoid jeopardizing their investments.

Needless to say, the Plaintiffs did not realize the substantial gains they were promised, and their investment monies, they believe, have all but disappeared. In an effort to recover their investment monies and the substantial returns they were "guaranteed," Plaintiffs filed this lawsuit on October 7, 1999, accusing the defendants of securities fraud, common-law fraud, and unlawful conversion. After Defendants refused to comply with several court orders, Plaintiffs filed a motion for judgment and for an order of contempt of court, which is presently before this Court by referral of Judge Coar.

Shortly after the complaint was filed on October 7, 1999, Plaintiffs sought to expedite discovery and filed a motion for a temporary restraining order ("TRO"). Counsel for Plaintiffs appeared at a hearing on October 22, 1999, before this Court, on Plaintiffs' motion for expedited discovery[1] and for a TRO. No one appeared on Defendants' behalf. The TRO was entered on October 22, 1999, by reason of the defendants' failure to appear or object. The TRO prohibited Defendants from "transferring, dispersing, moving, withdrawing, spending or otherwise disposing of any funds or assets" owned by them or over which they have any direct or indirect control, other than expenses for the bare necessities of life; required Defendants to supply by the end of

---

[1] The motion for expedited discovery was granted on October 25, 1999 [13-1].

business on October 26, 1999, a complete accounting of all funds invested by the plaintiffs; further required Defendants to supply by October 26 a full and complete listing of any and all accounts of any kind in which the defendants had funds or assets of any kind, a listing of all securities, of any kind, which they hold, and the location or form in which they are held; and required Defendants to supply by October 26 a full and complete listing of all assets of any kind in which they hold any interest, either directly or indirectly, including the manner in which title is held and the location of the assets.

The October 26 deadline came and went, but none of the defendants supplied any of the discovery required by the TRO. On November 2, 1999, the TRO was set to expire, but the parties extended it by agreement until December 2, 1999. In addition, this Court ordered the defendants to "delivery by 11/9/99, a list of all discovery in their possession as described in the previous order for expedited discovery." That order required the defendants to deliver to Plaintiffs' counsel substantially the same information as was required by the initial TRO. By November 9, Defendants had delivered no such list to the plaintiffs. A day later, Defendant Roberts filed a document in response to a different court order of November 5, which purported to show compliance with the TRO, but complained about the supposed "insufficiency of the time provided" (the initial TRO was entered October 22, 1999). Notably, the filing listed

several banking accounts, some of which had been recently closed, showing little funds and few transfers.

The TRO's prohibition against secreting, transferring, or dissipating funds was extended twice more by agreement without objection to December 2 and again to December 21. On December 21, the TRO expired, whereupon the Court granted Plaintiffs' motion for preliminary injunction without objection. The injunction continued the prohibitory language of the TRO by forbidding the defendants from "transferring, wasting, appropriating or otherwise disposing of funds in their control or possession until a full trial on the merits can be conducted." (Pls.' Mot. for T.R.O. and Prelim. Inj. Relief, at 2 & 14, granted by docket entry [33-1].)

On November 24, Plaintiffs filed a motion for judgment and an order of contempt of court. Judge Coar set a briefing schedule on December 21, 1999, which gave Defendants until January 4, 2000, to file a response to the motion. Judge Coar also orally directed Defendants to supply a written statement to the Court detailing the extent of their compliance with the previous court orders. On January 4, Defendants filed a response and invoked the Fifth Amendment privilege against self-incrimination, by reason of their being the subject of a criminal investigation for their involvement in the investment scheme.[2] Defendants also certified that they had provided the

---

[2] Defendants Roberts and Powell were later indicted in April of 2000.

- 4 -

Court with a "full and complete listing of his accounts and assets." (Answer to Mot. For Judgment And Answer to Mot. For Contempt.)

Rule 37(b) of the Federal Rules of Civil Procedure provides that where a party fails to obey a court order directing it to provide or permit discovery, the district court may enter an order "rendering a judgment by default against the disobedient party" upon a showing of "willfulness, bad faith, or fault" on the part of the non-complying party. FED. R. CIV. P. 37(b); *see also Hindmon v. National-Ben Franklin Life Ins. Co.*, 677 F.2d 617, 620 (7th Cir. 1982). When a proper showing is made, the district court has the inherent power "to impose the ultimate sanction of a grant of judgment (or its equivalent, dismissal with prejudice)." *Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999). This Court concludes that the prerequisites of imposing a Rule 37(b) sanction have been satisfied.

First, it must be stressed that the initial TRO had two components: a prohibitory and a compulsory component. The prohibitory component forbade the defendants from disposing of funds until the TRO's expiration on November 2, 1999, and the compulsory component required the defendants to supply certain discovery before an earlier deadline of October 26, 1999. The two extensions of the TRO that followed extended the prohibitory component's deadline, but they did not extend the deadline by

which Defendants had to comply with the compulsory component. Moreover, the parties also negotiated the first TRO extension in a manner consistent with this understanding. Those negotiations focused on the scope of the prohibitory component's restrictions on the defendants' expenditures for living and for carrying on their businesses. Therefore, October 26 is the date from which the defendants' compliance with the compulsory component of the TRO must be measured.

Plaintiffs argue that a Rule 37(b) sanction is appropriate here because the defendants have engaged in sanctionable conduct proscribed by Rule 37(b) by willfully and deliberately disobeying several court orders and an oral directive from the Court. They further suggest that a disobedient party's subsequent assertion of the Fifth Amendment does not immunize or shield it from the consequences of Rule 37(b). This Court agrees.

Clearly, Defendants have failed to obey court orders and directives to provide discovery. First, they disobeyed the TRO by failing to provide discovery before October 26. The discovery they did provide on November 10 can only be charitably described as superficial compliance, notwithstanding Defendants' certification that the November 10 submission was a "full and complete" listing of all assets and funds. Records subpoenaed by Plaintiffs demonstrate that other assets and funds existed in other accounts not provided by Defendants. According to these records, hundreds of thousands of dollars had been transferred to and from several other bank accounts which were not mentioned in

the "full and complete" submission on November 10. (Pls.' Reply in Supp. of Their Mot. for Judgment And Order of Contempt of Court, Exs. O & P.) In addition, Mr. Roberts represented "without the benefit of independent investigation" that two of the named entities, R.R. Investments, Inc. and Ronald L. Roberts, Inc. did not exist. However, Plaintiffs subpoenaed a copy of a check, apparently indorsed by Defendant Roberts, from Anthony Pope to R.R. Investments, Inc., a Missouri Corporation, in the amount of $200,000.00. (*Id.* Ex. Q.) Again, curiously, this transfer of funds as well as the bank account in which it was deposited are conspicuously absent from the November 10 submission. This "full and complete" identification of all assets and funds was misleading, incomplete, and false.

Second, Defendants disobeyed this Court's order of November 2, which required them to provide substantially the same discovery as required by the initial TRO to Plaintiffs. No such discovery was provided. Finally, Defendants ignored Judge Coar's oral directive on December 21 to submit to the Court by January 4, 2000, a detailed statement concerning their compliance or non-compliance with the TRO. For Rule 37 purposes, failure to comply with an unequivocal oral directive to produce certain information is no less sanctionable than a failure to comply with a formal written order. *See Halas v. Consumer Svces. Inc.*, 16 F.3d 161, 164 (7th Cir. 1994). Thus, Defendants have failed to comply with three court orders to provide discovery.

The second part of Rule 37(b) requires a showing of willfulness, bad faith, or fault. Contumacious conduct, dilatory tactics, or the failure of less drastic sanctions can result in the proper imposition of a sanction. *See Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). "Fault" does not mean the non-complying party's "subjective motivation," but rather "only describes the reasonableness of the conduct--or lack thereof--which eventually culminated in the violation." *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992)). This Court concludes that a Rule 37 sanction is appropriate because the defendants' conduct has been contumacious, they have repeatedly engaged in dilatory tactics, their non-compliance has been objectively unreasonable, and no less drastic sanction could secure their compliance since they have now tactfully foreclosed any possibility of securing their compliance.

The pattern of dilatory conduct began back in October of 1999 and continues to this day. For nearly two months Defendants have resisted compliance with the court's discovery orders, despite the fact that discovery was placed on an expedited schedule because of the danger that funds would be secreted or dissipated. Before this Court's hearing on the motion for judgment, Defendant Roberts sought to delay the oral argument by filing a motion to reset the briefing schedule and hearing date.

That Defendants have provided nothing responsive to the compulsory mandates of the TRO from October 22, 1999 to January 4, 2000 demonstrates that their conduct has been dilatory.

Second, Defendants' conduct has been objectively unreasonable. None of the defendants has ever contended that the discovery orders were overly burdensome or otherwise improper.[3] Nor have Defendants ever asked for more time to comply with the October 26 deadline. They have never complained that they could not understand what the orders required. The terms of the TRO, which were approved by the Court, were unambiguous and reasonable. The token submission made on November 10 and subsequent certification that it was "full and complete" simply underscores the unreasonableness of Defendants' conduct.

Finally, no less drastic sanction could secure the defendants' compliance now because they have invoked the Fifth Amendment's shield against compelled production of the information Plaintiffs seek. For some reason, Plaintiffs never sought less drastic sanctions earlier, nor did they ever file a motion to compel. Instead, Plaintiffs persisted in pursuing their motion for judgment, filing it twice just in case.[4] If the

---

[3] In his November 10 submission, over a week after the discovery-producing requirements of the TRO expired, Mr. Roberts complained about the "insufficiency of the time provided" to comply with the order.

[4] Plaintiffs filed two motions for judgment: one on November 24 [27-1], and another on December 10 [34-1].

specter of a default judgment has not hastened the defendants into compliance, it is doubtful that the imposition of a lesser sanction would have done so earlier.

Finally, we must consider the effect of Defendants' invoking the Fifth Amendment privilege. Defendants' willful and disobedient conduct became sanctionable at the close of business on October 26, 1999. Rather than invoking the privilege then, or when the Court ordered discovery on November 5, Defendants decided to prolong their defiant conduct until January 4, 2000. So instead of availing themselves of the privilege at the earliest possible moment,[5] Defendants chose to act in a sanctionable manner. They now hope to be immunized by the Fifth Amendment privilege against any consequences that might attend as a result of their prior sanctionable conduct.

This Court knows of no authority (nor have the defendants identified any) which holds that a party who has engaged in sanctionable conduct under Rule 37(b) can be immunized from its consequences by later invoking the Fifth Amendment. Of course, if the privilege is properly invoked as a refusal to comply with a discovery order, a party cannot be sanctioned for failing to

---

[5] Defendants suggest that they did not realize until January 4, 2000, that a criminal indictment was imminent. There are two responses. First, Defendants have been under a criminal investigation since before the complaint was filed in this case. Second, they were not actually indicted and arrested until April of 2000. Why the indictment became more imminent on January 4 than in December or November remains a mystery. It is more likely that January 4 was simply the most *convenient* date to invoke the privilege.

comply with it. But here, where the sanctionable conduct occurred prior to the invocation of the privilege, a Rule 37 sanction would not punish the disobedient party for invoking the privilege, but rather would punish it for engaging in sanctionable conduct.

What the invocation of the privilege does in this case is it permits the Court to draw negative inferences from Defendants' silence. Where a party invokes the Fifth Amendment in a civil case and refuses to comply with a court's order in response to probative evidence offered against him, the court is entitled to draw a negative inference from the party's silence. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 875 (7th Cir. 1998). But the inference drawn cannot "impose an unconstitutional cost on the exercise of the privilege." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). Thus, while silence is a relevant factor to be considered in light of the proffered evidence, a direct inference of guilt or liability from that silence is forbidden. *See id.*

On the question of whether Defendants' conduct violated Rule 37(b), no adverse inferences need be drawn since the violations are clear and obvious. And this Court easily finds, without drawing adverse inferences, that Defendants' violations were willful, since they were delayed and repeated. Defendants' non-

response to the motion for judgment makes their willfulness even more crystal clear.

Rule 37(b)(2) lists various categories of sanctions that may be imposed by the Court on a party who fails to obey an order to provide discovery, including entry of judgment and contempt. This Court feels that it should enter almost, but not quite, the extreme sanction of judgment as follows: the Court should deem as established the facts as to liability alleged in the complaint and should not allow Defendants to offer any evidence with regard to those facts. As to damages, Plaintiffs should be held to their proofs on a prove-up basis.[6]

With regard to Plaintiffs' motion for an order of contempt of court, this motion must be denied because to hold the defendants in contempt until such time as they obey the court's orders would impose too great a constitutional cost on the exercise of the privilege. Civil contempt is a use of the court's power to legally coerce parties to obey court orders. Coercion of Defendants at this time to provide discovery now shielded by the Fifth Amendment privilege would be a direct violation of the Fifth Amendment by forcing them to make a Hobson's choice of waiving their privilege or accepting the

---

[6] As a practical matter, since the defendants have refused to provide any further response other than that already given, whether the plaintiffs are held to their proofs via an expedited prove-up hearing or in the normal course, does not really matter except in a temporal sense. A prove-up hearing is simply a mechanism to expedite a judgment in favor of the plaintiffs in light of the ever-present (and perhaps now actual) danger that the funds invested have been dissipated, transferred, or secreted.

serious consequences of being held in contempt. Plaintiffs' motion for an order of contempt of court should therefore be denied.

For the forgoing reasons, this Court recommends that Plaintiffs' motion for judgment [27-1, 34-1] be denied; that the Court deem as established the facts as to liability as alleged in the complaint; that an expedited prove-up hearing on the issue of damages be conducted at which time Defendants shall be precluded from presenting any evidence; and that Plaintiffs' motion for an order of contempt of court [34-2, 40-1] be denied.

                                                                  MARTIN C. ASHMAN

**Dated:** June 14, 2000.         United States Magistrate Judge

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable David H. Coar within ten (10) days after service of this Report and Recommendation. *See* FED. R. CIV. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

RICHARD J. HICKEY, Esq.
Hickey, Melia, Kurfirst
  & Patterson, Chtd.
77 West Washington Street
Suite 800
Chicago, IL  60602

STEPHEN M. KOMIE, Esq.
Komie & Associates
20 North Clark Street
Suite 3500
Chicago, IL  60602-5002

KENNETH L. CUNNIFF, Esq.
Kenneth L. Cunniff, Ltd.
30 North LaSalle Street
Suite 2900
Chicago, IL  60601

Attorney for Plaintiffs

Attorneys for Defendants