
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6582 | DATE | AUG 2 3 2000 |
| CASE TITLE | | O'Connor v. Powell | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' motion for judgment [Docs. 27-1, 34-1] is denied. The facts of liability alleged in the plaintiffs' complaint are hereby deemed as established. An expedited prove-up hearing on the issue of damages will be conducted on October 13, 2000, at 11:00 a.m., at which time defendants shall be precluded from presenting any evidence. Plaintiffs' motion for an order of contempt of court [Docs. 34-2, 40-1] is denied.
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | AUG 25 2000 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | 80 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 AUG 24 PM 4: 00 | AUG 25 2000 date mailed notice | |
| dc(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN O'CONNOR, et al., | ) |
| | ) Case No. 99 C 6582 |
| Plaintiffs, | ) |
| | ) Judge David H. Coar |
| v. | ) |
| | ) Magistrate Judge |
| KENNETH S. POWELL, et al., | ) Martin C. Ashman |
| | ) |
| Defendants. | ) |

DOCKETED
AUG 25 2000

## MEMORANDUM OPINION AND ORDER

On April 11, 2000, this court referred plaintiffs John O'Connor et al.'s Motion for Judgment and Order of Contempt of Court to Magistrate Judge Martin C. Ashman. Judge Ashman found that defendants Kenneth S. Powell, et. al., had engaged in willful violations of the court's discovery orders. Although he denied plaintiff's motion for judgment, the magistrate judge recommended that, pursuant to Federal Rule of Civil Procedure 37(b), the defendants be precluded from contesting any facts as to liability. Judge Ashman also directed the plaintiffs to demonstrate their damages on a prove-up basis. In response to the magistrate judge's report and recommendation, plaintiffs submitted to this court an objection and request for clarification. After conducting a de novo review of Magistrate Judge Ashman's report and recommendation and examining the plaintiffs' objections thereto, this court accepts the magistrate judge's recommendation pursuant to Fed. R. Civ. P. 72.



## I. Factual Background

Plaintiffs agree with the magistrate judge's statements of fact, and this court hereby adopts in full the magistrate judge's factual findings. These facts are set forth as follows.

Plaintiffs were investors in an alleged real-estate investment scheme devised by the defendants who promised the plaintiffs a substantial return on their investment, according to the complaint. The defendants convinced the investors that they were in the process of clearing title to a number of contiguous parcels of land in an economically distressed area in Missouri, that they were close to entering a purchase agreement to acquire that land, and that after the closing, the land would be resold to a developer for a substantial profit. The scheme went awry (from plaintiffs' perspective) when plaintiffs began to realize that the closing would never happen, despite the defendants' assurances on numerous occasions that the plaintiffs' investments were safe and secure. At various times, plaintiffs were told that the defendants needed more money to keep the transaction alive, sometimes to pay off non-existent entities which ostensibly stood in the way of closing, and each time the plaintiffs gave more money. The defendants also cautioned plaintiffs to keep quiet about the closing difficulties to avoid jeopardizing their investments.

Needless to say, the plaintiffs did not realize the substantial gains they were promised, and their investment monies, they believe, have all but disappeared. In an effort to recover their investment monies and the substantial returns they were "guaranteed," plaintiffs filed this lawsuit on October 7, 1999, accusing the defendants of securities fraud, common-law fraud, and unlawful conversion. All discovery motions were referred to Magistrate Judge Ashman. After defendants refused to comply with several court orders, Plaintiffs filed a motion for judgment

and for an order of contempt of court, which was presented to the magistrate judge by referral of this court.

Shortly after the complaint was filed on October 7, 1999, plaintiffs sought to expedite discovery and filed a motion for a temporary restraining order ("TRO"). Counsel for plaintiffs appeared at a hearing on October 22, 1999, before Judge Ashman on plaintiffs' motion for expedited discovery[1] and for a TRO. No one appeared on defendants' behalf. The TRO was entered on October 22, 1999, by reason of the defendants' failure to appear or object. The TRO (1) prohibited defendants from "transferring, dispersing, moving, withdrawing, spending or otherwise disposing of any funds or assets" owned by them or over which they have any direct or indirect control, other than expenses for the bare necessities of life; (2) required defendants to supply by the end of business on October 26, 1999, a complete accounting of all funds invested by the plaintiff; (3) further required defendants to supply by October 26 a full and complete listing of any and all accounts of any kind in which the defendants had funds or assets of any kind, a listing of all securities, of any kind, which they hold, and the location or form in which they are held; and (4) required defendants to supply by October 26 a full and complete listing of all assets of any kind in which they hold any interest, either directly or indirectly, including the manner in which title is held and the location of the assets.

The October 26 deadline came and went, but none of the defendants supplied any of the discovery required by the TRO. On November 2, 1999, the TRO was set to expire, but the parties extended it by agreement until December 2, 1999. In addition, Judge Ashman ordered the

---

[1] The motion for expedited discovery was granted on October 25, 1999 [13-1].

defendants to "deliver[] by 11/9/99, a list of all discovery in their possession as described in the previous order for expedited discovery." That order required the defendants to deliver to plaintiffs' counsel substantially the same information as was required by the initial TRO. By November 9, defendants had delivered no such list to the plaintiffs. A day later, defendant Roberts filed a document in response to a different court order of November 5, which purported to show compliance with the TRO, but complained about the supposed "insufficiency of the time provided" (the initial TRO was entered October 22, 1999). Notably, the filing listed several banking accounts, some of which had been recently closed, showing little funds and few transfers.

The TRO's prohibition against secreting, transferring, or dissipating funds was extended twice more by agreement without objection to December 2 and again to December 21. On December 21, the TRO expired, whereupon the court granted plaintiffs' motion for preliminary injunction without objection. The injunction continued the prohibitory language of the TRO by forbidding the defendants from "transferring, wasting, appropriating or otherwise disposing of funds in their control or possession until a full trial on the merits can be conducted." (Pls.' Mot. for T.R.O. and Prelim. Inj. Relief, at 2 & 14, granted by docket entry [33-1].)

On November 24, plaintiffs filed a motion for judgment and an order of contempt of court. This court set a briefing schedule on December 21, 1999, which gave defendants until January 4, 2000, to file a response to the motion. The court also orally directed defendants to supply a written statement detailing the extent of their compliance with the previous court orders. On January 4, defendants filed a response and invoked the Fifth Amendment privilege against self-incrimination, by reason of their being the subject of a criminal investigation for their

involvement in the investment scheme.[2] Defendants also certified that they had provided the court with a "full and complete listing of his accounts and assets." (Answer to Mot. For Judgment And Answer to Mot. For Contempt.)

Records subpoenaed by plaintiffs demonstrate that other assets and funds existed in other accounts not provided by defendants. According to these records, hundreds of thousands of dollars had been transferred to and from several other bank accounts which were not mentioned in the purportedly "full and complete" submission on November 10. (Pls.' Reply in Supp. of Their Mot. for Judgment And Order of Contempt of Court, Exs. O & P.) In addition, defendant Roberts represented "without the benefit of independent investigation" that two of the named entities, R.R. Investments, Inc. and Ronald L. Roberts, Inc. did not exist. However, plaintiffs subpoenaed a copy of a check, apparently indorsed by Defendant Roberts, from Anthony Pope to R.R. Investments, Inc., a Missouri Corporation, in the amount of $200,000.00. (Id. Ex. Q.) Again, curiously, this transfer of funds as well as the bank account in which it was deposited are conspicuously absent from the November 10 submission.

Before the magistrate judge's hearing on plaintiff's motion for judgment, Defendant Roberts sought to delay the oral argument by filing a motion to reset the briefing schedule and hearing date. Defendants have also provided nothing responsive to the compulsory mandates of the TRO from October 22, 1999 to January 4, 2000.

---

[2] Defendants Roberts and Powell were later indicted in April of 2000.

## II. Discussion

Plaintiffs do not object to the magistrate judge's determination that defendants violated Rule 37(b) of the Federal Rules of Civil Procedure. Indeed, this court concurs in the magistrate judges' finding that defendants willfully and repeatedly violated the court's discovery orders. Specifically, the defendants failed to comply with the initial TRO deadline of October 26, 1999. They also missed the November 9, 1999 extension of time. When defendants finally submitted a listing of their assets and funds, their compliance fell far short of being "full and complete." Moreover, defendants disregarded this court's order that they file a detailed statement outlining their compliance (or more accurately, their non-compliance) with the TRO.

Rule 37 provides for the imposition of sanctions against a litigant who fails to cooperate in the discovery process. See Fed. R. Civ. P. 37(b). A district court may mete out sanctions as severe as dismissing the action or entering default judgment against the disobedient party. See id.; Hindmon v. National-Ben Franklin Life Insur. Corp., 677 F.2d 617, 620 (7th Cir. 1982). Sanctions are appropriate where the wrongdoers's conduct evidences wilfulness, bad faith, contumacious conduct, or otherwise dilatory tactics. See Crown Life Insur. Co. v. Craig, 995 F.2d 1376, 1382 (7th Cir. 1993).

In the present case, the court finds that the defendants' discovery violations warrant sanctions. As discussed above, the defendants' conduct was not only wilful, but their repeated and blatant disregard of the courts' orders suggests that their actions were taken in bad faith. Defendants continually engaged in dilatory conduct, beginning with their flouting of the court's directives throughout the fall of October of 1999, to the recent past, as evidenced by defendant Roberts' delay tactics before Judge Ashman. Until January 4, 2000, defendant failed to respond

to the compulsory mandates of the initial TRO. Not only has defendants' conduct evidenced bad faith, but their actions clearly have been unreasonable. Defendants have never challenged the propriety or reasonableness of the court's discovery orders. Rather, the terms of the TRO were clear and unambiguous.

Defendants' January 4, 2000 invocation of the Fifth Amendment privilege does not immunize them from Rule 37(b) sanctions. It would have been more appropriate for the defendants to have invoked the Fifth Amendment in response to the initial discovery order, rather than in this final desperate attempt to stave off sanctions. At this juncture, the defendants are deserving of censure not for exercising their Fifth Amendment rights, but for engaging in dilatory conduct before the assertion of privilege. See National Acceptance Co. of America v. Bathalter, 705 F.2d 924, 926-27 (7th Cir. 1983) (stating that the Fifth Amendment protects witnesses from being required to make disclosures that could incriminate them in later criminal proceedings).

Plaintiffs raise no objections to the above findings. Instead, plaintiffs' sole challenge is to the magistrate judge's refusal to enter judgment in their favor. Plaintiffs insist that defendants' noncompliance warrants the sanction of judgment. In advancing their objection, however, plaintiffs fail to offer any new arguments, and the court finds no reason to depart from the magistrate judge's recommendation.

Although Rule 37(b)(2) provides for sanctions as severe as an entry of judgment and contempt, the court does not feel that such extreme measures need be taken in the present case. The district judge is entrusted with broad discretion in choosing the appropriate discovery sanction. See Hindmon, 677 F.2d at 620. "Because of their very potency, [the court's] inherent

powers [to impose sanctions] must be exercised with restraint." Diettrich v. Northwest Airlines, 168 F.3d 961, 964 (7th Cir. 1999). This court is mindful that the norm of proportionality guides its application of sanctioning authority. See Crown, 995 F.2d at 1382 (citing Newman v. Metropolitan Pier & Exposition Authority, 962 F.2d 589 (7th Cir. 1992)).

With respect to the magistrate judge's denial of plaintiffs' request for an order of contempt of court, the plaintiffs do not appear to raise any objections. The magistrate judge balanced the competing interests involved in this case and concluded that issuing a contempt order would "impose too great a constitutional costs on the exercise of privilege." The court continued, "[c]oercion of Defendants at this time to provide discovery now shielded by the Fifth Amendment privilege would be a direct violation of the Fifth Amendment by forcing them to make a Hobson's choice of waiving their privilege or accepting the serious consequences of being held in contempt."[3] This court agrees. See LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389 (7th Cir. 1995) (stating that the "Supreme Court has prohibited practices that are coercive in that they make the exercise of privilege 'costly'"); Bathalter, 705 F.2d at 927 (observing that privilege applies to the discovery process).

With respect to the magistrate judge's denial of plaintiffs' motion for judgment, the court likewise agrees with Judge Ashman's recommendation. Although plaintiff's motion for judgment is denied, this order effectively secures plaintiffs a judgment in their favor, though absent a determination of the amount of liquidated damages. In other words, the facts of liability

---

[3] The court notes that the substantive validity of defendants' exercise of privilege has not been challenged.

alleged in plaintiffs' complaint are hereby deemed established. With liability established, plaintiff will be required to prove up their damages.

The defendants' infractions, albeit wilful and deliberate, did not so greatly prejudice plaintiffs so as to automatically entitle them to the relief requested. Defendants' refusal to provide the requested information hampered plaintiffs' attempts to ascertain the extent of defendants' assets. Despite the hurdles raised by defendants, however, plaintiffs managed to identify additional funds concealed by the defendants. In other words, the damage was kept to a controlled minimum. Rule 37(b) does not promise plaintiffs a slam-dunk victory; rather, it contemplates a sanction that aims to penalize those who flout court orders and deter others who are tempted to do so. See Hindmon, 677 F.2d at 621.

A prove-up hearing offers an equitable resolution. Defendants are prohibited from offering any evidence disputing liability or the amount of damages-- that is sanction enough. Conversely, such a measure compensates plaintiffs for the obstacles they have faced in discovery proceedings. Plaintiffs argue that a prove-up hearing would be expensive and burdensome, as they would be required to file a summary judgment motion prior to a hearing. Plaintiffs need not move for summary judgment, however, for liability has already been deemed established. Rather, the only remaining issue is the amount of damages to which plaintiff are entitled, and the court will proceed directly to a hearing on that question.

If Plaintiffs wish to proceed by affidavit, such affidavit shall be filed with this court and served upon Defendants at least 14 days prior to the hearing date. To the extent that Plaintiffs elect to proceed in whole or in part with live witnesses, a list of such witnesses shall be filed with

the court and served to defendants at least 14 days prior to the hearing. The prove-up hearing shall be held on October13, 2000 at 11:00 a.m.

### III. Conclusion

For the foregoing reasons, plaintiffs' motion for judgment [Docs. 27-1, 34-1] is denied. The facts of liability alleged in the plaintiffs' complaint are hereby deemed as established. An expedited prove-up hearing on the issue of damages will be conducted on October 13, 2000, at 11:00 a.m., at which time defendants shall be precluded from presenting any evidence. Plaintiffs' motion for an order of contempt of court [Docs. 34-2, 40-1] is denied.

Enter:

_____

David H. Coar

United States District Judge

Dated: AUG 23 2000